UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 3 1 2007
5 -3₁-07

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| CHRYSTALYNNE CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | **07CV3056** |
| | ) | **JUDGE KENDALL** |
| | ) | **MAG.JUDGE BROWN** |
| JOHN E. POTTER | ) | |
| POSTMASTER GENERAL, | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| AND NASSER MUHAMMED (individually | ) | **JURY TRIAL DEMANDED** |
| and in his official capacity) | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

This is an action brought under the Civil Rights Act of 1964, as amended, by the Civil

Rights Acts of 1991, 42 U.S.C. §§ 2000e et seq., and the Reconstruction-era Civil Rights Act, 42

U.S.C. § 1981, for the redress of unlawful employment discrimination and retaliation by JOHN

E. POTTER POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE (hereinafter

"USPS") and NASSER MUHAMMED ("NASSAR"), because of CHRYSTALYNNE

CALVIN'S (hereinafter "Plaintiff") race and exercising of the right to complain against the

discriminatory conduct inflicted by USPS. The Plaintiff was subjected to an environment that

was hostile and humiliating to Plaintiff, and where Plaintiff was retaliated against because she

(Plaintiff) complained of USPS' discriminatory employment practices – and filed a workers

compensation claim. This lawsuit seeks injunctive and declaratory relief, compensatory

damages, punitive damages, attorneys fees, and other appropriate legal and equitable relief.

1

In addition, this is an action arising under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et. seq., (hereinafter "ADA") and Illinois law regarding the tort of Intentional Infliction of Emotional Distress and to remedy discrimination and other actions by USPS against Plaintiff in violation of these laws. Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, attorneys fees, and other appropriate legal and equitable relief.

## STATEMENT OF THE CASE

1.      Plaintiff is an African-American woman, who is employed by USPS. Plaintiff filed a claim with the Illinois Workers Compensation Commission, the United States Equal Employment Opportunity Commission ("EEOC"), and complained to various managers at the USPS about the discriminatory and harassing acts of her manager. As a result, Plaintiff was subjected to severe harassment and retaliation by her manager, including various inexplicable write-ups, verbal assaults, and failing to provide a reasonable accommodation to Plaintiff.

2.      Plaintiff became severely emotionally distressed and upon the advice of her doctor requested an accommodating work schedule and position at a different location, which USPC has denied.      Although USPS refused to provide Plaintiff with an accommodating position, the USPS have provided other similarly situated employees with an accommodating position.  Consequently, the USPS has discriminated against Plaintiff by refusing to make a reasonable accommodation to assist Plaintiff, engaging in harassment, retaliation, creating a hostile work environment, and causing or exacerbating Plaintiff's health concerns by inflicting upon Plaintiff severe emotional and physical distress.

2

3.     USPS has discriminated against Plaintiff by refusing to reassign her even though USPS was aware that Plaintiff's current work environment was severely conflicting with her emotionally and physically, by engaging in harassment against Plaintiff, retaliating against Plaintiff, by creating a hostile work environment, and by causing or exacerbating Plaintiff's health concerns by inflicting upon Plaintiff severe emotional and physical distress. As a result, Plaintiff reported the discriminatory conduct of USPS to various USPS managers or supervisors and the EEOC -- Plaintiff filed her Charge of Discrimination with the EEOC, which mailed Plaintiff a right to sue letter on March 1, 2007 and May 9, 2007.

## PARTIES

4.     Plaintiff is an African-American woman, who worked for the USPS for more than eight years. Plaintiff was employed by USPS as a sales and service distribution clerk at its Naperville Office. Plaintiff became severely physically and emotionally distressed on the job because of continuous harassment and retaliation by her manager, and requested an accommodating position – which the USPS denied. At all relevant times in this Complaint Plaintiff was and is still a qualified individual with a disability under the ADA, and able to perform the essential functions of her job as a distribution or window clerk.

5.     Defendant is the United States Postal Service and is registered and conducts business in Illinois. Defendant NASSAR MUHAMMED ("NASSAR") is a manager of the USPS, who managed Plaintiff in the Naperville office.

6.     At all relevant times in this complaint Defendant has continuously employed at least fifteen employees.

3

### JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. §12101, et seq. (Americans With Disabilities Act) and 28 U.S.C. § 1331 (federal question), 1343, and supplemental jurisdiction under 28 U.S.C. §1367 over the common law claim of intentional infliction of emotional distress, as it relates to the facts contained in the federal question.

8.     Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Chicago, Illinois.

9.     Plaintiff was issued a Notice of Right to Sue Letter, finding that there was reasonable cause to believe that Plaintiff had been discriminated and retaliated against based on Plaintiff's race, color, or her disability – in violation of Title VII or the ADA. Plaintiff fully incorporates herein by reference the attached Notice of Right to Sue Letters for Case No. 4J-604-0114-05 and 4J604005404.

10.     Plaintiff has timely filed this lawsuit within 90 days of her receipt of the Notice of Right to Sue from the EEOC.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (a)(1) and (2), and (b) as the acts complained of herein took place in Cook County, Illinois.

12.     Plaintiff demands trial by jury.

### Facts Upon Which Claims Are Based

13.     Plaintiff has been employed by Defendant for approximately eight years – she was hired in February 1999 as a distribution clerk.

14.     Plaintiff's former manager (Nassar Muhammed) and other managers or supervisors of USPS inflicted repeatedly and continuously severe harassment, discrimination,

4

and retaliation upon Plaintiff, which has caused Plaintiff to become severely emotionally and physically distressed.

15.　　For example, Plaintiff's former manager (Nassar Muhammed) called another employee a "black bitch" – an EEOC complaint was filed against said manager by employee.

16.　　Plaintiff has been subjected to ridicule and harassment as a result of being continuously pulled away from her work into manufactured disciplinary meetings and unjustifiably yelled at by her managers or supervisors.

17.　　USPS has various locations that would reasonably accommodate Plaintiff's health disabilities, but refuses to assign Plaintiff to such locations.

18.　　Plaintiff has made accommodations for other employees health disabilities.

19.　　After Plaintiff complained about the USPS not accommodating her health disabilities and filed her workers compensation and EEOC charge, USPS further retaliated against Plaintiff.

20.　　The USPS knowingly and unreasonably denied Plaintiff a reassignment to a different location.

21.　　The USPS has informed Plaintiff that she must return to her current location for work, if she wants to work despite USPS knowing that such location creates a serious risk of exacerbating Plaintiff's health disabilities.

22.　　As a result of the foregoing, Plaintiff has been unreasonably forced to seek disability compensation, retaliated against, and subjected to a hostile work environment.

23.　　The USPS actions constitute a constructive discharge. The situation was so extreme that Plaintiff was forced into psychological treatment, and any reasonable employee, under similar circumstances, would also find the situation intolerable.

5

24. At all relevant times hereto, USPS actions were willful and wanton, entitling Plaintiff to an award of punitive damages.

25. Plaintiff is now suffering and will continue to suffer emotional, psychological, and monetary damages as a result of the USPS' discrimination and retaliation, unless and until this Court grants Plaintiff relief.

26. As a result of the USPS' above stated actions, Plaintiff has been deprived of income and employment opportunities and benefits that she (Plaintiff) would have earned had she (Plaintiff) not been discriminated and retaliated against because of her race, disability, and complaining and protesting against USPS.

27. In addition, as a result of the foregoing actions by USPS, Plaintiff has suffered extreme emotional distress, mental anguish, depression, anxiety, embarrassment, humiliation, physical stress, and other mental and physical damages, which entitles Plaintiff to compensatory damages.

28. That all of the foregoing actions by the USPS were willful and malicious and/or made with the reckless disregard for Plaintiff's rights as secured by the civil rights laws, and would be considered reprehensible by anyone living in a civilized society, which entitles Plaintiff to an award of punitive damages.


## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12111 et seq
### USPS

29. Plaintiff re-asserts and re-alleges each and every allegation of Paragraphs 1 through 28, the same as if fully set forth herein.

30. At all relevant times USPS has been a covered entity under Title I of the ADA.

6

31. At all times relevant to this Complaint, USPS was engaged in an industry affecting commerce, has employed more than 15 or more employees during the relevant time periods, and therefore, is an "employer" within the meaning of Title I of the ADA.

32. Title I prohibits discrimination for any qualified individual with a disability. 42 U.S.C. § 12111 (8).

33. At all relevant times in this Complaint, Plaintiff was an "individual with a disability" in that she (Plaintiff) has severe diminished health – a condition which substantially limits her major life activities.

34. Thus, Plaintiff is a person with a disability within the meaning of the ADA 42 U.S.C. § 12102 (2)(A) and (C).

35. At all relevant times to this Complaint, Plaintiff was and still is a "qualified" individual with a disability in that Plaintiff was and is able to perform the essential functions of available positions with USPS, including, but not limited to, Plaintiff's current position of sales/distribution clerk, with or without an accommodation.

36. USPS has by refusing to reasonably accommodate Plaintiff's disabilities, and/or by refusing to provide Plaintiff with the rights, opportunities, and privileges provided to other non-disabled employees and applicants, has discriminated against Plaintiff in violation of 42 U.S.C. § 12112.

37 Pursuant to the ADA, in relevant part, the following discrimination is prohibited:

    A. "[E]xcluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability ..." 42 U.S.C. § 12112(B); 29 C.F.R. § 1630.4; and

7

B.      "[N]ot making reasonable accommodations; or denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability ..."      42 U.S.C. §§ 12111 (9)(B), 12112(B)(5)(a)(b), 29 C.F.R. § 1630.2(o)(2)(ii), 1630.9.

38.      USPS' actions as stated above constitute discrimination against Plaintiff in violation of the ADA by denying Plaintiff equal opportunities, refusing to reasonably accommodate Plaintiff, creating a hostile work environment, and by otherwise engaging in prohibited discrimination under the ADA.

39.      As a direct and proximate cause of USPS' violations of the ADA, Plaintiff has loss wages, has incurred significant costs for health care coverage and other expenses, has suffered severe economic injury, and has experienced pain and suffering including humiliation, embarrassment, and severe emotional and physical distress.

40.      The foregoing unlawful employment practices of the USPS were extreme and intentional, because they continue this very day.

41.      At all time relevant to this Complaint, DJHL has acted with malice or reckless indifference to the federally protected rights of Plaintiff, in violation of the ADA.

WHEREFORE, Plaintiff requests that this Court grant Plaintiff injunctive and declaratory relief, compensatory damages, punitive damages, reinstate Plaintiff in an accommodating position, attorneys fees, and other appropriate legal and equitable relief, and any other additional relief that this Court deems just and proper.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## USPS and NASSAR

42.     Plaintiff re-asserts and incorporates each and every allegation of Paragraphs 1 through 28, the same as if fully set forth herein.

43.     The actions of USPS of intentionally denying Plaintiff a reasonable accommodation and then ridiculing and retaliating against Plaintiff are violations of the tort of Intentional Infliction of Emotional Distress under Illinois Law.

WHEREFORE, Plaintiff requests that this Court grants Plaintiff injunctive and declaratory relief, compensatory damages, punitive damages, reinstate Plaintiff in an accommodating position, attorneys fees, and other appropriate legal and equitable relief, and any other additional relief that this Court deems just and proper.

## COUNT III
## TITLE VII and 42 U.S.C. § 1981
## USPS and NASSAR

44.     Plaintiff re-asserts and incorporates each and every allegation of Paragraphs 1 through 45, the same as if fully set forth herein.

45.     The USPS discriminated against Plaintiff on the basis of her race, as demonstrated by the fact that they treated Plaintiff differently from her non-African American and male counterparts.

46.     Plaintiff has exhausted her administrative remedies and is entitled to relief under Title VII for the violations of Plaintiff's rights.

47.     That from the inception of Plaintiff's employment under her former manager, and continuously up to and including the date of this Complaint, the USPS has intentionally

9

discriminated against Plaintiff on the basis of her race, denying her the same right to make and enforce contracts and the full and equal enjoyment of all benefits, privileges, terms, and conditions of the contractual relationships as enjoyed by white and male employees.

48.     The actions of USPS constitute racial and sex discrimination in employment in violation or 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991

WHEREFORE, Plaintiff respectfully request that this Court grant (1) all wages and benefits which Plaintiff would have received but for the discrimination, including back pay and front pay, and prejudgment interest; (2) compensatory damages; (3) punitive damages; (4) an award of attorneys fees and all costs and expenses of this litigation; (5) such other appropriate legal and equitable relief, and any other additional relief that the law and justice allow.

## COUNT IV
## (RETALIATION)
## TITLE VII and 42 U.S.C. § 1981
## USPS and NASSAR

49.     Plaintiff re-asserts and incorporates each and every allegation of Paragraphs 1 through 28, the same as if fully set forth herein.

50.     Shortly after USPS and NASSAR became aware Plaintiff filed a claim with the Illinois Workers Compensation Commission, her managers or supervisors individually and in concert with other USPS executives, first discriminated against Plaintiff in the terms and conditions of Plaintiff's employment, and then retaliated against Plaintiff for having filed a claim with the EEOC and Illinois Workers Compensation Commission.

51.     In addition, upon learning that Plaintiff had reported the foregoing conduct, the USPS further retaliated against Plaintiff by disadvantaging Plaintiff in the terms and conditions

of Plaintiff's employment, by treating Plaintiff differently than her non-African American and male counterparts, harassing Plaintiff, and eventually causing Plaintiff's constructive discharge.

52.     The foregoing retaliation is unlawful under both Title VII and 42 U.S.C. § 1981; thus, Plaintiff is entitled to relief for violation of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully request that this Court grant (1) all wages and benefits which he would have received but for the discrimination, including back pay and front pay, and prejudgment interest; (2) compensatory damages; (3) punitive damages; (4) an award of attorneys fees and all costs and expenses of this litigation; (5) such other appropriate legal and equitable relief, and any other additional relief that the law and justice allow.


Respectfully submitted,

The Bilal Law Firm
150 N. Michigan Avenue, Suite 2800
Chicago, Illinois 60601
(312) 624-7709
Attorney No. 6271954

11

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

Chrystalynne Calvin
Complainant

v.

Agency Case No.   4J-604-0114-05
EEOC Case No.     440-2006-00151X
OFO Docket No.    01A60209

Formal Filed:   September 15, 2005

John E. Potter,
Postmaster General,
c/o Great Lakes Area Operations
Respondent.

## FINAL AGENCY DECISION

This is the final agency decision of the U.S. Postal Service regarding your complaint of discrimination identified above. In that complaint, you alleged discrimination and harassment based on your Race (African-American), Sex (Female), and in Retaliation (Prior EEO Activity) when 1) on May 30, 2005, you requested to leave early due to a migraine headache and were placed on an Emergency Placement in Off-Duty Status; and 2) on June 24, 2005, you were issued a Notice of Removal dated June 23, 2005, for unacceptable conduct.

## CASE CHRONOLOGY

An Equal Employment Opportunity Investigator processed your complaint, and a copy of the Investigative Report was transmitted to you on June 13, 2006. Following receipt of that report, you had 30 days in which to request a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) or a final agency decision without a hearing.

Although you initially requested a hearing, on April 23, 2007, you voluntarily withdrew your request for a hearing and requested a final agency decision. Administrative Judge Young B. Kim on April 23, 2007 remanded your complaint to the Postal Service for the issuance of a final agency decision. Thus, this decision is being issued in compliance with the order of the Administrative Judge.

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 2

## APPLICABLE LAW

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. Downing v. U.S. Postal Service, EEOC Appeal No. 01822326 (September 19, 1983); Jennings v. U.S. Postal Service, EEOC Appeal No. 01932793 (April 13, 1994); and Saenz v. Department of the Navy, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco, 438 U.S. at 576.

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. Mayberry v. Vought Aircraft Company, 55 F.3d 1086, at 1090 (5th Cir. 1995); Mitchell v. Toledo Hospital, 964 F.2d 577, at 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. Day v. Postmaster General, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, at 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans' Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production

and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. Postmaster General, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. Postmaster General, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, *supra*, 509 U.S. at 507, United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, at 715 (1983). See also Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, at 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, at 1185 (5th Cir. 1997). See also Papas v. Postmaster General, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, at 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001). Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Tincher v. Wal-Mart Stores, Inc., 118 F. 3d 1125, at 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F. 3d 1319, at 1323 (10th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, *Id*. In Hicks, the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required regardless of whether or not the employer's explanation for its action was believable. See also Brewer v. Postmaster General, EEOC Appeal No. 01941786 (June 21, 1994) and Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 4

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected class were treated more favorably. This is so, in part, because agencies are not monolithic entities. Turner v. Department of the Navy, EEOC Request No. 05900445 (September 25, 1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995). In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F. 2d 719, at 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F. 2d 63, at 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F. 2d 1181, at 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, at 1547 (S.D. N.Y. 1986), aff'd. 814 F. 2d 653 (2nd Cir. 1987). The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. See, for example, Tolar v. U.S. Postal Service, EEOC Appeal No. 01965083 (December 16, 1998), citing O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); and Knapp-Huffman v. Attorney General (Bureau of Prisons), EEOC Appeal No. 01991026 (January 16, 2002). If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, Id.; Allen v. Department of the Navy, EEOC Appeal No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

## Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that (1) he or she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F. 2d 590, 593 (2nd Cir. 1988); Coffman v. Department of Veterans' Affairs, EEOC Request No. 05960437 (November 20, 1997); and Whitmire v. Department of the Air Force, EEOC Appeal No.

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 5

01A00340 (September 25, 2000). A complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. See, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. Postmaster General, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative). A complainant may also establish a prima facie case by presenting evidence which, unexplained, would reasonably give rise to an inference of reprisal. Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of his or her prior participation or opposition activity (Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable a complainant to establish the causal connection element of a prima facie case. Garcia-Gannon v. Department of the Air Force, EEOC Appeal No. 01821195 (June 30, 1983). Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive. Burlington Northern Santa Fe Railway Company v. White, 126 S. Ct. 2405 (2006); and Lindsey v. U.S. Postal Service, EEOC Request No. 05980410 (November 4, 1999).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001). The Court in Breeden noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003). To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

Any harassment of an employee that would not occur but for the employee's previous EEO activity may violate Title VII if sufficiently patterned or pervasive. McKinney v. Dole, 765 F.2d 1129, 1138 (D.C. Cir. 1985). See also Patrick v. Postmaster General, EEOC Appeal No. 01A05642 (November 28, 2000). For

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 6

harassment to be considered retaliatory conduct in violation of Title VII, it must be insufficiently pervasive or severe as to create a hostile work environment which significantly and adversely affects the emotional or psychological well-being of the employee, and must somehow be connected to that employee's previous EEO activity. See Hicks v. Gates Rubber Company, 833 F.2d 1406, at 1412-1413 (10th Cir. 1987); Gilbert V. City of Little Rock, 722 F.2d 1390, at 1394 (8th Cir. 1983); Henson v. City of Dundee, 682 F.2d 897, at 904 (11th Cir. 1982); Bundy v. Jackson, 641 F.2d 934, at 943-944 (DF.C. Cir. 1981); Rogers v. EEOC, 454 F.2d 234, at 238 (5th Cir. 1971).

## PROCEDURAL AND FACTUAL BACKGROUND

At all times relevant to the issue(s) in this complaint, you were employed as a Part-Time Flexible Sales Service/Distribution Associate at the Naperville Illinois Post Office. You have alleged that your Postmaster Jacqueline Sanchez and Customer Service Supervisors Nasser Muhammad, Anne Gilmore, and Mark Baker intentionally discriminated against you because of your Race (African-American), Sex (Female), and in Retaliation (Prior EEO Activity) when 1) on May 30, 2005, you requested to leave early due to a migraine headache and were placed on an Emergency Placement in Off-Duty Status; and 2) on June 24, 2005, you were issued a Notice of Removal dated June 23, 2005, for unacceptable conduct.

## COMPLAINANT'S *PRIMA FACIE* CASE

1) on May 30, 2005, you requested to leave early due to a migraine headache and were placed on an Emergency Placement in Off-Duty Status

### Disparate Treatment (Race, Sex)

Prong (1) of the analysis requires that you establish your membership in the protected classes. You have done so, as the record evidence indicates that your Race is African-American and your Sex is Female (Investigative File [IF.], Counselor's Report, Page [p.] 1, Affidavit A, p. 2).

Prong (2) requires you to establish that you were subjected to an adverse employment action. Record evidence indicates that on May 30, 2005, you were placed in Emergency Off-Duty status as the result of a verbal altercation between yourself and Supervisor Muhammad (IF., Affidavit A, Pages [pp.] 3-8, Affidavit B, p. 1, Affidavit C, pp. 1-2, Exhibit 7, p. 1). This constitutes an adverse employment action because it affected the terms and conditions of your employment with the Agency. Prong (2) of the analysis is established.

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 7

To establish prong (3) of the analysis, you must identify similarly situated
employees, who are outside of your protected groups and who you believe were
treated more favorably. To do this, you must show that all of the relevant
aspects of your employment situation are virtually identical to those of the
employees whom you alleged were treated more favorably.

The record indicates that you have failed to specifically identify any comparison
employees (IF, Affidavit A, p. 36). Supervisor Muhammad and Postmaster
Sanchez have both indicated that there are no other employees who were
similarly situated to you and who were not placed in Emergency Off-Duty Status
(IF., Affidavit B, p. 2, Affidavit C, p. 4). Prong (3) of the analysis has not been
established.

Therefore, you have failed to establish a *prima facie* case for Disparate
Treatment Discrimination.

### Retaliation

Your participation in prior protected activity is clearly established by Exhibit 2,
which shows that you have filed several EEO Complaints in the past few years
(IF., Exhibit 2). Prong (1) of this analysis has been established.

Prong (2) requires you to establish that the alleged discriminating official was
aware of your prior EEO activity. Record testimony establishes that Supervisors
Muhammad, Gilmore, and Baker were all aware of your prior EEO activity (IF.,
Affidavit B, p. 4, Affidavit D, p. 2, Affidavit E, p. 2). Prong (2) of the analysis has
been established.

Similar to prong (2) of the Disparate Treatment Analysis, prong (3) of the
Retaliation Discrimination analysis requires you to establish that you were
subjected to an adverse employment action. As stated above, the record
evidence establishes this prong because you were placed in Emergency Off-Duty
Status.

In prong (4), you must establish a causal link between your prior protected
activity and the alleged discrimination. You have not provided any evidence
which supports your contention that you were placed in Emergency Off-Duty
Status because of your participation in prior protected activity. Your belligerent
behavior and the use of profane language toward your supervisor were the
precipitating causes of your being placed on Emergency Off-Duty Status (IF.,
Exhibit 7, Affidavit B, p. 1). Further, the record shows that your last EEO
complaint was formally filed December 27, 2004 and closed 11 days later on
January 7, 2005, nearly five months prior to the discrete act which is articulated
in accepted issue #1 (IF., Exhibit 2). This does not establish the requisite nexus
between your prior protected activity and the alleged discrimination. In Clark

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 8

County School District v. Breeden, 2002 WL 402573 (SCT 2001), the U.S. Supreme Court held that to establish nexus, the temporal proximity must be "very close," citing O'Neal v. Ferguson Construction Co., 237 F.3d 1248, 1253 (CA 10 2001); Richmond v. Oneok, Inc., 120 F.3d 205, 209 (CA 10 1997)(3-month period insufficient); Hughes v. Dervinski, 967 F.2d1168, 1174-1175 (CA 7 1992)(4-month period insufficient). Additionally, the EEOC is relying on shorter proximity time periods, i.e. 3-4 months. Brown v. Department of Defense, EEOC Appeal No. 01990413 (February 13, 2002); Lombardo v. United States Postal Service, EEOC Appeal No. 01996935 (April 4, 2002); Turner v. United States Postal Service, EEOC Appeal 01A03220 (February 21, 2003); Turner v. Department of Defense, EEOC Appeal No. 01A21018 (May 29, 2003); Lynch v. United States Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003). In Buggs v. Powell, 293 F. Supp. 2d 135 (D.D.C. 2003), the U.S. District Court for the District of Columbia states that while courts have not established the maximum time lapse between protected activity and alleged retaliatory actions for establishing causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length. Further, the District Court stated that the cases cited by the Breeden Court seem to suggest that if a plaintiff relies upon temporal proximity alone to establish causation, the time span must be less than three months. Considering the above case law, the record evidence does not support a causal link between your prior protected activity and your current EEO claim, based upon temporal proximity. Prong (4) of the analysis has not been established.

Therefore, you have failed to establish a *prima facie* case for Retaliation Discrimination.

It should also be noted that record evidence reveals the Emergency Placement in Off-Duty Status was immediately rescinded in a Grievance Settlement dated July 19, 2005 and awarded you retroactive wages to June 1, 2005. (IF., Exhibit 8).

## MANAGEMENT'S LEGITIMATE NON-DISCRIMINATORY REASON

Assuming, *arguendo*, that Complainant had established a *prima facie* case for Disparate Treatment or Retaliation Discrimination then management must articulate legitimate, non-discriminatory reasons for their actions.

Supervisor Muhammad has stated that you were placed in Emergency Off-Duty Status because you created a hostile work environment when you became loud and belligerent on the workroom floor (IF., Affidavit B, p. 1). Supervisor Muhammad indicated that when he asked you questions about taking unscheduled leave, you became angry and began to use profane language toward him (IF., Affidavit B, p. 1). He also stated that when he asked you to gather your things and clock out, you continued to use profane language and

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 9

were told to leave or the police would be called to remove you (IF., Affidavit B, p. 3). Supervisor Muhammad has averred that your race, sex, and prior EEO activity were not a factor in his decision to place you in Emergency Off-Duty Status (IF., Affidavit B, p. 4).

Postmaster Sanchez, the concurring official, has testified that she has witnessed first hand your belligerent behavior and your use of profane language (IF., Affidavit C, p. 3). She stated that your conduct was the only reason for the discipline you were issued (IF., Affidavit C, p. 2). She also stated that she believes your initial reasons for wanting to leave early on the day in question are not plausible and that she informed you directly that your behavior was unacceptable (IF., Affidavit C, pp. 2-3).

Supervisor's Gilmore and Baker have testified that they had no involvement in this issue (IF., Affidavit D, p. 1, Affidavit E, p. 1).

Postmaster Sanchez and Supervisor Muhammad cite the National Agreement between the United States Postal Service and the American Postal Workers' Union, AFL-CIO, Article 16 governing Discipline Procedures, and the *Employee and Labor Relations Manual* (ELM) section 665 governing Postal Standards of Conduct, as justification for their actions.

## PRETEXT

Having thus articulated the agency's legitimate, facially non-discriminatory explanation, all presumptions of discrimination now drop from the case. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 125 L.Ed. 407, 113 S.Ct. 2742 (1993). The burden shifts to the complainant to prove by a preponderance of the evidence that the agency's proffered reasons are merely a pretext for discrimination.

Pretext may be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). A review of the record indicates that you offer nothing more than rank speculations and conclusory allegations. These efforts are insufficient in order to establish pretext. *Morgan*, supra.

There is very little evidence to support a claim of pretext in this case. Management is given the right to take emergency disciplinary steps when they feel that an employee is a danger to herself or others (IF., Exhibit 5, p. 6). Your use of profane language and otherwise belligerent behavior caused Supervisor Muhammad to perceive you as a threat, and therefore he took action. Although the record does

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 10

contain an email communication from Tameka Strange, former employee of the Naperville Post Office, which indicates that she experienced racial "hatred" from Supervisor Muhammad, the email contains only the opinion of Ms. Strange and does not contain any information regarding the accepted issue (IF., Post Investigation Documents, Email from Tameka Strange). While it is noted that the Emergency Placement in Off-Duty status was rescinded in the grievance process, this does not establish that management illegally discriminated against you (IF., Exhibit 8). The grievance process is governed by the contract between the USPS and the APWU, while the issue of discrimination is governed by Federal Law. Therefore, management's reasons for their actions are deemed legitimate and non-discriminatory.

   2) on June 24, 2005, you were issued a Notice of Removal dated June 23, 2005, for unacceptable conduct

### Disparate Treatment (Race, Sex)

Your membership in the protected classes has been established (IF., Affidavit A, p. 1). You have also established that you were subjected to an adverse employment action, by virtue of receiving a Notice of Removal, stemming from the investigation of the events in accepted issue #1 (IF., Exhibit 9).

However, as stated above, the record indicates that you have failed to specifically identify any comparison employees (IF., Affidavit A, p. 36).

Therefore, you have failed to establish a *prima facie* case for Disparate Treatment Discrimination.

### Retaliation

Your participation in prior protected activity and management's awareness of this activity has been established (IF., Exhibit 2, Affidavit B, p.4, Affidavit D, p. 2, Affidavit E, p. 2). The issuance of the Notice of Removal establishes the adverse employment action necessary for prong (3) of the analysis (IF., Exhibit 9).

However, as with accepted issue #1, it is prong (4) that is not supported by the record evidence. The record indicates that the issuance of the Notice of Removal was a result of management's investigation into the May 30, 2005, incident (IF., Exhibit 9). It has already been established that the May 30, 2005, incident was not casually related to your prior protected activity and therefore it follows that the issuance of the Notice of Removal is also not connected to your prior protected activity.

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 11

Therefore, you have failed to establish a *prima facie* case for Retaliation Discrimination.

The record reflects a Grievance Settlement dated July 19, 2005 whereby the Notice of Removal was immediately reduced to a Letter of Warning to be held for one year and should no subsequent discipline of the same or similar nature take place, the letter would be removed. (IF., Exhibit 10)

## MANAGEMENT'S LEGITIMATE NON-DISCRIMINATORY REASON

Assuming, *arguendo*, that Complainant had established a *prima facie* case for Disparate Treatment or Retaliation Discrimination then management must articulate legitimate, non-discriminatory reasons for their actions.

Supervisor Muhammad has stated that you were issued the Notice of Removal for Unacceptable Conduct as a result of the May 30, 2005, incident (IF., Affidavit B, p. 3). He testified that a pre-disciplinary interview was set up with you and your union official, but you failed to show up for the interview (IF., Affidavit B, p. 3). He averred that after waiting a few days for you to contact him, he sent the Notice of Removal (IF., Affidavit B, p. 3).

Postmaster Sanchez, the concurring official, has testified that she reviewed the information provided by Supervisor Muhammad in support of his decision to issue the Notice of Removal and concurred (IF., Affidavit C, p. 4).

Supervisors Gilmore and Baker have both testified that they are unaware of the reason that you were issued a Notice of Removal (IF., Affidavit D, p. 2, Affidavit E, p. 1).

Postmaster Sanchez and Supervisor Muhammad cite the National Agreement between the United States Postal Service and the American Postal Workers' Union, AFL-CIO, Article 16 governing Discipline Procedures, and the *Employee and Labor Relations Manual* (ELM) section 665 governing Postal Standards of Conduct, as justification for their actions.

## PRETEXT

Having thus articulated the agency's legitimate, facially non-discriminatory explanation, all presumptions of discrimination now drop from the case. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 125 L.Ed. 407, 113 S.Ct. 2742 (1993). The burden shifts to the complainant to prove by a preponderance of the evidence that the agency's proffered reasons are merely a pretext for discrimination.

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 12

Pretext may be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). A review of the record indicates that you offer nothing more than rank speculations and conclusory allegations. These efforts are insufficient in order to establish pretext. Morgan, supra.

Supervisor Gilmore has testified that she witnessed you begin to get loud and use profanity in a meeting with Supervisor Muhammad on June 1, 2005 (IF., Affidavit D, p. 1). This evidence supports the notion that management's reasons for the discipline are legitimate. Management's reasons are also supported by the letter, signed by two of your co-workers, indicating that they witnessed your loud and belligerent behavior toward Supervisor Muhammad (IF., Exhibit 13, p. 1). Your behavior violated the Joint Statement on Violence in the Workplace, which guarantees that all employees of the Postal Service shall have a safe and humane environment (IF., Exhibit 3, p. 1). The reduction of your Notice of Removal to a Letter of Warning via the grievance process does not in any way suggest that Management illegally discriminated against you (IF., Exhibit 10, pp. 1-3). Therefore, management's reasons for their actions are deemed legitimate and non-discriminatory.

## CONCLUSION

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); and Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F .Supp. 318 (D.Mass), aff'd 545 F .2d 222 (1st Cir. 1976) (applying the standard to reprisal cases); the Agency finds that you have failed to prove that you were subjected to discrimination as alleged. Consequently, your case is now closed with a finding of no discrimination.

## APPEAL TO EEOC

You have the right to appeal the Postal Service's final decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848, within 30 calendar days of your receipt of this decision. You must use Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting

Final Agency Decision
Chrystalynne Calvin
4J-604-0114-05
Page 13

documentation or brief were also submitted to the National EEO Investigative Services Office, NEEOISO – FAD, USPS, P. O. Box 21979, Tampa, FL 33622-1979. You are advised that if you file your appeal beyond the 30-day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be styled **Chrystalynne Calvin v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same 90-day time period for filing the civil action.

*Doris a Hill*

Doris A. Hill
EEO Services Analyst
NEEOISO                                              Date: 5/9/2007
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:** Appeal Form 3573
cc:
Complainant
Chrystalynne Calvin
6622 South Rockwell
Chicago, IL 60629

**Delivery Confirmation No.** 0307 0020 0004 7418 8956

Representative
Jakob Miller
National Alliance of Postal and Federal Employees
1225 E. 79th Street
Chicago, IL 60619-3307

**Delivery Confirmation No.** 0307 0020 0004 7418 8949



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

Chrystalynne E. Calvin,
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.

Appeal No. 0120060266[1]

Hearing No. 210a50174x

Agency No. 4J604005404

### DECISION

### JURISDICTION

On October 14, 2005, complainant filed an appeal from the agency's October 12, 2005 final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.* The appeal is deemed timely and is accepted pursuant to 29 C.F.R. § 1614.405(a). For the following reasons, the Commission AFFIRMS the agency's final order.

### BACKGROUND

At the time of events giving rise to this complaint, complainant worked as a Part Time Flexible Mail Processing Clerk at the agency's Naperville, Illinois facility. Complainant contacted an EEO Counselor and filed a formal EEO complaint on March 30, 2004, alleging that she was discriminated against on the bases of race (African-American), sex (female), and religion (Christian) when:

1.  on January 29, 2004, her supervisor approached her and questioned her about not working overtime on January 26, 2004;

---

[1]Due to a new data system, this case has been re-designated with the above-referenced appeal number.

2                                    0120060266

2.    on February 7, 2004, her supervisor approached her and she was denied union representation;

3.    on June 2, 2004, her supervisor issued her a Letter of Warning; and

4.    on May 19, May 28 and June 4, 2004, she was denied a union steward.

At the conclusion of the investigation, complainant was provided with a copy of the report of investigation and notice of right to request a hearing before an EEOC Administrative Judge (AJ). Complainant timely requested a hearing. The agency filed a Motion for a Decision Without a Hearing, and complainant did not file a response. The AJ issued a decision without a hearing on October 5, 2005. The agency subsequently issued a final order adopting the AJ's finding that complainant failed to prove that she was subjected to discrimination as alleged.

In her decision, the AJ determined complainant's allegations regarding the denial of union stewards did not render her aggrieved. Furthermore, the AJ found complainant failed to establish a *prima facie* case of discrimination when she was issued the Letter of Warning. Finally, the AJ found the agency articulated a legitimate, nondiscriminatory reason for the Letter of Warning, and complainant failed to prove that reason was a pretext for discrimination.

## CONTENTIONS ON APPEAL

Neither the agency nor complainant raised any contentions on appeal.

## STANDARD OF REVIEW

In rendering this appellate decision we must scrutinize the AJ's legal *and* factual conclusions, and the agency's final order adopting them, *de novo*. *See* 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an agency's final action shall be based on a *de novo* review . . ."); *see also* EEOC Management Directive 110, Chapter 9, § VI.B. (November 9, 1999). (providing that an administrative judge's "decision to issue a decision without a hearing pursuant to [29 C.F.R. § 1614.109(g)] will be reviewed *de novo*"). This essentially means that we should look at this case with fresh eyes. In other words, we are free to accept (if accurate) or reject (if erroneous) the AJ's, and agency's, factual conclusions and legal analysis – including on the ultimate fact of whether intentional discrimination occurred, and on the legal issue of whether any federal employment discrimination statute was violated. *See id.* at Chapter 9, § VI.A. (explaining that the *de novo* standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

4                                                    0120060266

sufficient notice of the overtime. The agency maintains that complainant is not covered under the contractual provision that guarantees overtime notice. Regardless, complainant failed to raise a dispute as to the reason for the discipline, and failed to present sufficient evidence that a discriminatory motive was the impetus behind the discipline. We also agree with the AJ that the remaining issues did not render complainant aggrieved.

## CONCLUSION

Accordingly, the agency's final decision is AFFIRMED.

### STATEMENT OF RIGHTS - ON APPEAL

#### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Chrystalynne E. Calvin
6622 S Rockwell
Chicago, IL 60629-1738

Jakob Miller
NAPFE
1225 E 79th St
Chicago, IL 60619 3307

U.S. Postal Service (Great Lakes)
NEEOISO - Appeals
U.S. Postal Service
PO Box 21979
Tampa, FL 33622-1979

**MAR 0 1 2007**
Date

Equal Opportunity Assistant

## ANALYSIS AND FINDINGS

We must first determine whether it was appropriate for the AJ to have issued a decision without a hearing on this record. The Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. *Id.* at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. *Id.* at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non moving party. *Celotex v. Catrett*, 477 U.S. 317, 322 23 (1986); *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case.

If a case can only be resolved by weighing conflicting evidence, issuing a decision without holding a hearing is not appropriate. In the context of an administrative proceeding, an AJ may properly consider issuing a decision without holding a hearing only upon a determination that the record has been adequately developed for summary disposition. *See Petty v. Department of Defense*, EEOC Appeal No. 01A24206 (July 11, 2003). Finally, an AJ should not rule in favor of one party without holding a hearing unless he or she ensures that the party opposing the ruling is given (1) ample notice of the proposal to issue a decision without a hearing, (2) a comprehensive statement of the allegedly undisputed material facts, (3) the opportunity to respond to such a statement, and (4) the chance to engage in discovery before responding, if necessary. According to the Supreme Court, Rule 56 itself precludes summary judgment "where the [party opposing summary judgment] has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250. In the hearing context, this means that the administrative judge must enable the parties to engage in the amount of discovery necessary to properly respond to any motion for a decision without a hearing. *Cf.* 29 C.F.R. § 1614.109(g)(2) (suggesting that an administrative judge could order discovery, if necessary, after receiving an opposition to a motion for a decision without a hearing).

After a review of the record, we find the AJ was correct in issuing a decision without a hearing because no dispute of material fact exists. There is no dispute in the record that complainant was issued the Letter of Warning because of her failure to work overtime on January 26, 2004. The record reveals that others outside of complainant's protected classes were also issued Letters of Warning for the same infraction. Complainant only contends that she was not given

5

0120060266

# COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

# RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

_Carlton M. Hadden_

Carlton M. Hadden, Director
Office of Federal Operations

MAR 0 1 2007

Date